# STANDARD OIL COMPANY *v.* BROWN.

PLEADING; VARIANCE; MASTER AND SERVANT; NEGLIGENCE AND CONTRIBU-
TORY NEGLIGENCE.

1. There is a fatal variance between allegation and proof, where the declara-
   tion alleges the negligence of the defendant to have consisted of failing
   to properly protect a hole or opening in the ceiling of a stable
   and having allowed a bale of hay, by reason of such improper pro-
   tection, to fall from a loft above through the hole or opening upon
   the plaintiff, and the evidence shows that the hole or opening was
   protected in the loft by a box extending around it to the height
   of 4 feet, so that it was impossible for anything from the loft to go
   through the opening, unless it was lifted over the box, or thrown or
   allowed to fall down.

2. The allegation in a declaration that the negligence of the defendant
   consisted of permitting hay and feed to be passed through a hole
   or opening of the ceiling of defendant's barn, from a loft above,
   without notice to its employees below, and that the defendant failed
   to give its employees, of whom the plaintiff was one, proper notice
   with respect of the danger of the situation, and allowed a bale of
   hay to be thrown through said hole or opening, without any notice
   or warning of any kind to the plaintiff, is sufficient, when supported
   by proof that another of the defendant's employees threw from the
   loft, through the hole or opening, the bale which struck and in-
   jured the plaintiff; it not being essential for the plaintiff to name in
   his declaration the agency that caused the accident, if it is alleged
   that the defendant is directly responsible for the infliction of the
   injury.

3. The negligence of a fellow servant will not relieve the master from
   liability, where there is evidence from which the jury can find that
   the master was guilty of negligence, and that his negligence con-
   tributed to the injury.

4. Where a servant, employed in a stable, is struck and injured by a bale
   of hay negligently thrown by a fellow servant from a loft above,
   through an opening in the ceiling, and such dangerous use has been
   made of the opening continuously for nine years, the master is pre-
   sumed to have had knowledge of such dangerous use, and is guilty

of negligence towards the injured man in permitting the dangerous condition to exist in the stable, if he has failed to notify him of such use; and the injured man is entitled to recover for his injuries from his master if he had no knowledge of the danger or opportunity to observe it.

5. *Semble,* that an instruction to the jury in a personal-injury suit by a servant against his master is too favorable to the defendant when to the effect that the plaintiff cannot recover if he knew, "or by the exercise of ordinary care and prudence would have known," of the dangerous agency which caused his injury, the true test being, not in the exercise of care to discover the danger, but whether it was known or plainly observable by the servant.

No. 1836. Submitted April 4, 1908. Decided May 5, 1908.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for personal injuries. *Affirmed.*

The facts are stated in the opinion.

*Mr. A. Leftwich Sinclair, Mr. J. J. Darlington,* and *Mr. John Ridout* for the appellant.

*Mr. Creed M. Fulton, Mr. Joseph W. Cox,* and *Mr. W. Gwynn Gardiner* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is a suit brought in the supreme court of the District of Columbia by the appellee, Abraham Brown, plaintiff below, to recover from appellant company, the Standard Oil Company, damages for injuries sustained while in the employ of said company.

It appears that the plaintiff entered the employ of the defendant in January, 1904, as an oil tank-wagon driver. His duties required him to take a team and wagon from defendant's barn in the morning, and, after using it during the day in the delivery of oil, return it to the barn in the evening. The plain-

tiff was required to groom his team in addition to his duties of delivering oil. The barn in which the horses were kept was 30 feet wide and 50 feet long. It contained two rows of stalls, one on either side, with a space of 12 feet between, extending the full length of the barn. In the ceiling, above the space between the stalls, and about the middle of the barn, there was an opening 4 feet square, surrounded, on the floor of the loft above, by a wooden inclosure or box about 4 feet high. In the loft was stored baled straw, which was used for bedding the horses.

It further appears that, for about nine years, one Coleman had been employed by the defendant, and among his duties was that of bedding the horses; that, during the period of his employment, Coleman had been accustomed to throw bales of straw through the opening in the ceiling from the loft to the floor below. In doing so, it was necessary to lift the bale up to the top of the box or inclosure in the loft and push it over, so that it would fall through the opening. Plaintiff received the injuries complained of on February 2, 1904, by being struck by a bale of straw dropped by Coleman from the loft through said opening.

Plaintiff, in his declaration, alleges, among other things, as follows: "That, on or about the 8th day of February, A.D. 1904, while the defendant was carrying on the said business (dealing in oils) as aforesaid in the manner aforesaid, the plaintiff was then and there in the employment of the said defendant as a laborer, and plaintiff was then and there required and directed by the said defendant, in the performance of his duty as a laborer as aforesaid, to enter said stable of the said defendant in the said city of Washington, District of Columbia, in which said stable there was a loft or storeroom where the feed for the horses was kept, and a certain hole or opening through which said feed passed from said loft or storeroom to the stable below; and it then and there became and was the duty of the said defendant to have the said hole or opening so guarded that the hay and feed from the loft or storeroom would not fall upon the said plaintiff while he was in the exercise of his said duty as a laborer in the stable below, yet the defendant, wholly neglecting its said duty in that regard, then and there, and while the plaintiff was en-

gaged as aforesaid in said stable in the performance of his duty as a laborer as aforesaid, and in pursuance of the instructions and directions of the defendant as aforesaid, did not protect the said hole or opening in any way whatsoever, but wholly disregarding its said duty in the premises, carelessly and negligently allowed a bale of the said hay to fall through the said hole or opening upon the said plaintiff, who was at work in the stable below, and who was wholly ignorant of the said defendant's careless and negligent manner of protection, being otherwise in the exercise of due care and diligence on his part, in consequence whereof, said plaintiff was struck by the said bale of hay on the side of his head and neck and shoulder, and on the lower portion of his back, and, by reason of the said bale of hay striking the said plaintiff as aforesaid, he then and there suffered a severe shock to his whole system."

The declaration is in four counts. The aforegoing allegation as to the negligence of the defendant is substantially the same in the second and third counts of the declaration. The fourth count, however, in addition, charges negligence against defendant as follows: "It then and there became and was the duty of the said defendant to not only have the said hole or opening so guarded that the hay and feed in the said loft or storeroom could not pass through said hole or opening and fall upon and injure those engaged in the performance of their respective other duties in the stable below, but that it became and was also the duty of the said defendant to not permit the said hay and feed to be thus passed through the said hole or opening without proper warning, or timely notice to those employed in the stable below; and it also became and was the duty of the said defendant to exercise such care and diligence in the matter of employing reasonably skilful, competent, and careful employees to so handle the said hay and feed in transmitting the same from the loft or storeroom above to the stable below, as not to endanger the lives and limbs of those employed in the stable below; and it then and there became and was the duty of the said defendant to give its employees, engaged in handling or placing the hay and feed as aforesaid, as well as those who were employed in the stable be-

low, such proper and necessary instructions with respect to the dangers of passing the hay or feed through the said hole or opening, and the performance of their respective duties, as to prevent injury and danger to the lives and limbs of the employees engaged in the stable below; yet the defendant, wholly neglecting its said duties in this regard, then and there and while the plaintiff was engaged as aforesaid, and in pursuance of the instructions and directions of the defendant as aforesaid, did not protect the said hole or opening in any way whatsoever, or do any of the other duties that it was called upon to discharge in the premises, but wholly disregarding its said duties in the premises, did so carelessly and negligently allow a bale of the said hay to fall, or to be passed, or thrown through the said hole or opening, without any notice, or warning, or signal, or instruction of any kind to plaintiff or by any of its said employees."

The court, at the request of counsel for defendant, instructed the jury, in substance, that it was incumbent upon the plaintiff to show affirmatively by a preponderance of the evidence that the accident was the result of the negligence of the defendant; that such negligence must consist in the failure to do what a reasonable and prudent person would ordinarily have done under the same circumstances; that, when plaintiff entered the employment of defendant company and engaged in the work assigned him, he assumed the ordinary risks, hazards, and dangers incident thereto, not only in so far as they were actually known to him, but also in so far as would have been known to him by the exercise of ordinary care on his part; that, if plaintiff, prior to the time of the accident, by the exercise of ordinary care and prudence, would have known of the existence of the hole or opening complained of, and the manner in which straw or other material was thrown through said hole, plaintiff cannot recover; that, if the circumstances relied upon by plaintiff to show negligence are consistent with ordinary care on the part of the defendant, plaintiff cannot recover; that if, prior to the accident, the plaintiff learned of the existence of the opening in the ceiling, and that bales of straw were frequently thrown through said opening, then plaintiff cannot recover; that if, just prior to

throwing the bale of straw through the opening, which injured
plaintiff, the coemployee, Coleman, who threw the bale of straw,
warned plaintiff of his intention, and plaintiff, after hearing and
understanding the warning, disregarded it, and walked beneath
the opening, then plaintiff cannot recover.

The court, on its own motion, among other things, instructed
the jury that plaintiff was entitled to know the purpose for
which the opening in the ceiling was used. "There are two ways
that a man can know a thing that he is entitled to know: One
by finding it out himself, and the other by having somebody else
tell him. This company was under the duty of telling Brown,
unless Brown found it out himself before he was hurt. So, if
you find that Brown did know of the dangerous use to which
the hole was put, then there is no aspect of the case which would
render the company liable to him."

The court further instructed the jury, in effect, that if, at
the time plaintiff was injured, he did not know that danger ex-
isted in the barn, it is for the jury to determine from the evi-
dence whether or not it was negligence for the company not to
have informed him of the existence of the opening in the ceiling
and the use made of it. If the jury find that the situation at
the barn was such that defendant was justified in believing that
any man would see the conditions there existing himself, the de-
fendant was not required to acquaint plaintiff with the condi-
tions there existing; but, if you find that the situation was such
that the company was not justified in believing that Brown
would find out for himself immediately that the use was danger-
ous, and that this use was made of the hole, then the company
would be held to be negligent in failing to inform the plaintiff
of it, and would be liable for the injuries sustained.

The jury were further instructed to the effect that no liabil-
ity would attach to the defendant by reason of the injuries sus-
tained by plaintiff, if he was injured exclusively through the
negligence of Coleman. The law will not hold defendant liable
for an injury so caused alone by the negligence of a fellow-em-
ployee. The court summed up its charge as follows: "If you find
that, at the time he was injured, Brown did not know that this

hole was used for casting down hay; and if you find that the situation of the stable, the danger of the openings, the times of the use, and the like, were such as not to justify the company in believing that Brown would know that for himself,—then the company was under the duty of telling him. If they did not tell him, they would be negligent and responsible for his injuries. That is the only theory in the case on which the company would be liable."

There was evidence adduced at the trial to show that plaintiff had never been advised by the defendant, or any of the defendant's employees, either of the existence of the opening in the ceiling, or the purpose for which it was used. Plaintiff testified to this effect; and, further, that, during the period of his employment, less than two weeks, he was required to leave the barn with his wagon to deliver oil at 6 o'clock in the morning, and that he did not complete the delivery of the oil and return to the barn until 6 or 7 o'clock in the evening. At the time of year that he was employed, in January, he left the barn before daylight in the morning, and returned after dark in the evening. It also appears that the barn was poorly lighted, there being but a small oil lamp at each end of the passageway between the stalls.

The witness Coleman testified that he not only notified plaintiff of the use made of the opening in the ceiling, but warned him before throwing down the bale of straw that injured him. He testified, in part, as follows:

Q. Now state whether or not, prior to that time, you told Brown about that hole, and what it was used for?

A. Yes, sir; I stated to Mr. Brown—

Q. When?

A. When he first came there, like I would any other new man. Every new man that came along, I told him about the hole and what it was used for.

Q. Yes.

A. Not because there was any imminent danger there, there was nothing dangerous about that hole at all, because it was used to throw down straw; and I hollered always before I would throw anything down. I had a knack of hollering if I would

throw anything down, and I would holler even if I threw down only a little dust, to look out below. I had no way to get dust out of that place. I would carry the dust to the north door to sweep it out.

Q. Tell us as near as you can what you said to Brown about this hole at the time he started to work for the Standard Oil Company.

A. At the time he started to work?

Q. Yes.

A. Oh, I pointed him to the hole.

Q. You pointed out the hole to him?

A. Yes, sir; I pointed out the hole, and told him what it was used for.

Q. What did you tell him that it was used for?

A. To throw down straw, sometimes, and, any time that I hollered, to look out below; and I think any man that ever worked there will tell you the same, that I have told him what that hole was for.

Q. The hole was used regularly for the purpose of throwing down straw for bedding for the horses, was it not?

A. Yes, sir; that is what they used it for.

Q. And how long had you used it for that purpose?

A. I used it all the time I was there.

Plaintiff, in his testimony, denies that Coleman either called his attention to the hole, or explained its use, or gave him any warning on the evening of the accident. Coleman is not corroborated by any of the employees as to his custom of calling out to persons below before throwing straw through the opening.

It is contended by counsel for defendant that the court erred in refusing to instruct the jury to return a verdict for defendant. It is insisted that this instruction should have been given for the reason that there is a fatal variance between the averments of plaintiff's declaration and the proof. There are four counts in the declaration. In the first three, the defendant is charged with negligence in not keeping the hole or opening in the ceiling of the barn so guarded that hay and

feed kept in the loft would not fall through upon plaintiff while he was engaged in the proper performance of his duties. In other words, these three counts charged defendant with having failed to properly protect the hole or opening, and having allowed a bale of hay, by reason of such improper protection, to fall through said hole or opening upon the plaintiff. There is clearly a fatal variance here, for the evidence discloses that the hole or opening in the ceiling was protected or guarded in the loft by a box extending around it to a height of 4 feet. The evidence is uncontradicted to the effect that it was impossible for anything from the loft to go through the opening until it was lifted over this box and thrown down. Plaintiff's whole case rests upon evidence to the effect that one Coleman, a fellow employee with plaintiff, threw the bale of straw through the opening that caused plaintiff's injury. Hence, it will be observed that what is complained of in the first three counts of the declaration, the improper guarding of the opening to prevent feed and hay from falling through, was not, according to the evidence, the cause of the accident.

We think, however, that this defect is cured in the fourth count of the declaration. Here, it is charged that the negligence of the defendant consisted in permitting hay and feed to be passed through the hole or opening without notice to those employed in the stable below; that defendant failed to give its employees proper instructions with respect to the danger of the situation, and allowed a bale of hay to be "thrown through the said hole or opening, without any notice, or warning, or signal, or instruction of any kind to plaintiff." While the allegations of this count are not as clear and explicit as the rules of good pleading demand, we think they are sufficient to charge defendant with negligently permitting the accident to occur through the agency of one of its servants. We do not deem it essential for plaintiff, in his declaration, to name the agency that caused the accident if it is alleged that defendant was directly responsible for the infliction of the injury. The allegation that defendant caused the bale of straw to be thrown through the hole or opening is sufficient. So far

as liability is concerned, if the accident resulted from the negligence of defendant, it is immaterial if the bale was thrown by an employee of defendant, so long as it is alleged that it was caused to be thrown by the defendant.

It is further insisted that the jury should have been instructed by the court to return a verdict for defendant because the accident in question was not caused by the negligence of the defendant, but resulted either from the contributory negligence of the plaintiff, or from the negligence of plaintiff's fellow servant Coleman. We are of the opinion that the jury were fully justified in finding from the evidence that the use made of the opening, in throwing bales of straw through it to the floor below, was a dangerous use. It was a condition existing in the barn, and one which, if permitted to continue with the knowledge of defendant, would, in the absence of contributory negligence on the part of plaintiff, render defendant liable for the injury sustained by plaintiff.

Numerous authorities have been cited by counsel for defendant to the effect that there is no duty imposed upon an employer to anticipate breaches of duty on the part of his employees; that the law presumes that servants will obey the law, and faithfully perform their duties; that, while the defendant was bound to use ordinary care and provide a reasonably safe place for plaintiff to work, it was not required to guard the place against negligent and unauthorized use by one of its servants; that, when one enters the employment of another, he takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of his employment; that an employer is not required to instruct an employee in regard to dangers which can only result from the negligence of a fellow servant, and that the servant must make a reasonable use of his senses, and, if a condition is apparent which, of necessity, must be dangerous, he is required to exercise reasonable and ordinary care in relation thereto. These principles are all so elementary that it would serve no good purpose to discuss them, further than to suggest that we do not think they apply to the facts in this case.

Plaintiff was not injured as the result of a single breach of duty on the part of his fellow servant Coleman. For nine years, Coleman had been in the employ of defendant, and for most of the time had been engaged in the work he was doing at the time plaintiff was injured. The throwing down of the particular bale of straw that injured plaintiff was not the sole negligent and unauthorized act of Coleman; it was what, to the knowledge of defendant, he had been doing for years. The continuous and repeated acts of Coleman were what rendered the place dangerous. While defendant would not be chargeable with negligence if the injury of plaintiff had resulted from Coleman, without the knowledge or permission of defendant, throwing a single bale of straw through the opening, defendant will be presumed to have known of the continued and accustomed use which was made of the opening, and to have authorized it to be so used. The distinction consists in defendant's knowledge of the dangerous use. It will not be contended that defendant would be liable if it had instructed Coleman to only throw loose straw through the opening, and, that being the customary manner of conveying straw from the loft to the floor below, Coleman, on this particular occasion, had violated instructions, departed from the custom, and thrown down the bale of straw. That would present a different case from the one before us, yet that is the case presented by most, if not all, of the authorities cited by counsel for defendant.

Defendant, if guilty of permitting a dangerous condition to exist in its barn, cannot relieve itself from responsibility by hiding behind the negligence of Coleman. The negligence of a fellow servant will not relieve the defendant from liability where there is evidence from which the jury could find that the defendant was guilty of negligence, and that its negligence contributed to the injury. In *Grand Trunk R. Co.* v. *Cummings,* 106 U. S. 702, 27 L. ed. 267, 1 Sup. Ct. Rep. 493, it is said: "If the negligence of the company contributed to—that is to say, had a share in producing—the injury, the company was liable, even though the negligence of a fellow servant * * * was contributory also. If the negligence

of the company contributed to, it must necessarily have been an immediate cause of, the accident; and it is no defense that another was likewise guilty of wrong." In *Rogers* v. *Leyden,* 127 Ind. 50, 26 N. E. 210, the court said: "The law cannot be reproached with such injustice as is involved in the assertion that a wrongdoing employer may shelter himself behind the act of one of his employees, who, like himself, has been guilty of an actionable wrong." The defect in defendant's position consists in attempting to attribute a single act of negligence to Coleman; in other words, insisting that Coleman, by a single negligent act of which defendant could not be expected to have knowledge or take notice, converted the barn from a safe to a dangerous place. But that is not this case. Here, Coleman was doing what he had been accustomed to do, as he testified, with the knowledge and approval of defendant's local superintendent. The danger consisted in the customary, and not the exceptional, use made of the opening in the ceiling.

Under the state of facts here presented, we are of the opinion that it was the duty of defendant to notify its employees of the unusual and dangerous use made of the opening in the ceiling. While plaintiff testified that he had never seen the hole, we think if he had, and had been informed, as the evidence of Coleman implies, that bedding for the horses was thrown down through it, he would have been justified in assuming, in the absence of specific instructions or knowledge to the contrary, that the material would be thrown down in such a manner as to insure the safety of persons below. There is no evidence to the effect that plaintiff was informed of the careless and dangerous manner in which the straw was thrown through the opening. Neither is there any evidence that plaintiff was ever in the barn, prior to the time of the injury, when straw was so thrown down, so that he could have observed the reckless manner in which Coleman performed his work. We are forced to the conclusion that defendant must not only be presumed to have known, but that it did know, of the manner in which its servant Coleman was accustomed to use the opening. This being established, in the absence of

contributory negligence on the part of plaintiff, liability at-
taches.

The case of *Northern P. R. Co.* v. *Dixon,* 194 U. S. 338,
48 L. ed. 1006, 24 Sup. Ct. Rep. 683, is especially relied
upon by counsel for defendant as being decisive of this case.
We find no difficulty in distinguishing it. There, Dixon
was injured while on duty in the operation of the trains of
the railroad company. He was injured as the result of a mis-
take of an operator and the train despatcher; and it was held
that the company was not liable. The distinction between this
case and the one at bar is clearly stated by Mr. Justice Brewer
as follows: "Here the company had adopted reasonable rules
for the operation of all its trains. No imputation is made of
a want of competency in either the train despatcher or the
telegraph operator. So far as appears, they were competent and
proper persons for the work in which they were employed. A
momentary act of negligence is charged against the telegraph
operator. No reasonable amount of care and supervision which
the master had taken beforehand would have guarded against
such unexpected and temporary act of negligence. Before an
employer should be held responsible in damages it should
appear that in some way, by the exercise of reasonable care and
prudence, he could have avoided the injury. He cannot be
personally present everywhere and at all times, and in the na-
ture of things cannot guard against every temporary act of
negligence by one of his employees." In that case the court
exonerates the company for reasons that do not appear in this
case. There, a momentary act of negligence on the part of an
employee occurred, of which the company could not have had
notice. Here, it was not a momentary act on the part of Cole-
man. He was doing what he had done for years. There is
no evidence to the effect that he was not a competent person
to perform the duties assigned him. It must therefore be
presumed that his custom of throwing baled straw through the
opening in the ceiling of the barn was a custom established
with the knowledge and consent of defendant. If Dixon, in
the case just cited, had been injured as the result of a de-

spatch sent with the approval of the railroad company, or in accordance with an established negligent custom in the operation of the road, there would have been no question of the liability of the company. And that is the case at bar. We cannot view it from any other standpoint.

It is well settled that even though the master is negligent in not giving his servant instructions as to the dangerous conditions attached to his employment, if the servant, through others, or through his own observation, receives such information, and is afterwards injured, the master is not liable. In that case, the servant would be chargeable with contributory negligence in voluntarily and knowingly placing himself in a dangerous position where accident was liable to occur. In the case at bar, the question of the contributory negligence of the plaintiff was fairly presented to the jury. The evidence discloses that the use of the opening in the ceiling of the barn was a regular one, and, therefore, became one of the dangerous conditions attached to the employment of those assigned to perform work in the barn. The whole question presented to the jury was, whether plaintiff had been informed of this danger, or had been so situated that he had an opportunity to observe the danger. If he had, and exposed himself to the danger, he was guilty of contributory negligence. If not, defendant was guilty in not informing him of the existence of this dangerous condition. This question was fairly presented to the jury, under the instructions of the trial court, and the jury found in favor of plaintiff. We think the evidence is sufficient to support the verdict.

Defendant complains of the following instruction: "The jury are instructed that the plaintiff, by entering the employment of the defendant company, and engaging in the work assigned to him, assumed the ordinary risks, hazards, and dangers incident thereto, not only so far as they were actually known to him, but also so far as they would have been known to him by the exercise of ordinary care on his part; and, if the jury believe from the evidence that the plaintiff, prior to the time he was struck by the bale of straw men-

tioned in the evidence, knew, or by the exercise of ordinary care and prudence would have known, of the existence of the hole or opening complained of, and the manner in which the straw or other material used in the defendant's stable was thrown down from the loft through said hole or opening into the stable below, then the plaintiff cannot recover, and the verdict should be for the defendant." While we think this instruction fairly states the law as to assumed risks, if there was any error at all, it was one in favor of defendant and against the plaintiff. The rule on this point is clearly stated in *Choctaw, O. & G. R. Co.* v. *McDade,* 191 U. S. 64, 48 L. ed. 96, 24 Sup. Ct. Rep. 24, as follows: "The charge of the court upon the assumption of risk was more favorable to the plaintiff in error than the law required, as it exonerated the railroad company from fault if, in the exercise of ordinary care, McDade might have discovered the danger. Upon this question, the true test is not in the exercise of care to discover dangers, but whether the defect is known or plainly observable by the employee."

From a careful review of the record in this case, we are of the opinion that the evidence is sufficient to support the verdict, and that the charge of the court was most favorable to the defendant. We find no prejudicial error. The judgment is affirmed with costs, and it is so ordered.          *Affirmed.*

A writ of error to the Supreme Court of the United States was allowed May 8, 1908.