# PEAKE *v.* UNITED STATES.

CONTRACTS; BONDS; PRINCIPAL AND SURETY.

1. Where a contract for Government work contains covenants by the contractors to observe the requirements of the act of Congress of August 13, 1894 (28 Stat. 278), and to promptly make payments to all persons supplying them labor and materials in the prosecution of the work provided for in the contract, and a bond, contemporaneously executed by the contractors, is conditioned upon the performance by them of all of the covenants and conditions of the contract, the contract by reference is incorporated into the bond and becomes as much a part of the bond as if copied *verbatim* into it; and an action on the bond can not be defeated by the sureties upon the ground that the bond does not conform to the statute in that the provision of the statute for the protection of the persons supplying labor and materials can not be imported from the contract into the bond, but must be recited in the bond itself.

2. Nor will such an action be defeated by the fact that the reference in the bond is to a contract with "Cornelius N. Bliss, Secretary of the Interior," while the true contract is with "the United States of America, acting in this behalf by Cornelius N. Bliss, Secretary of the Interior," where the subject matter of the contract as described in the bond is identical with that described in the contract, and no one has been misled or prejudiced by the inaccuracy.

No. 970. Submitted April 10, 1900. Decided April 25, 1900.

Hearing on an appeal by the defendants (specially allowed) from an interlocutory order of the Supreme Court of the District of Columbia in an action on a bond. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Wm. C. Prentiss, Messrs. Douglass & Douglass* and *Mr. Joseph D. Wright* for the appellants.

*Mr. S. T. Thomas* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an interlocutory appeal allowed from an order of the Supreme Court of the District, which refused to strike

out a declaration and dismiss a suit on a bond because the bond was unauthorized by law, as it was alleged.

On October 22, 1897, one Frank Baldwin, who, although a party to the suit in the court below, does not appear in this appeal, and the appellant, William C. Peake, constituting a firm of Baldwin & Peake, entered into a contract with the United States, acting through the Secretary of the Interior, for the construction of four pavilion buildings at the Government Hospital for the Insane in this District, for a specified compensation therein mentioned. The contract, which was in writing, contained several stipulations and covenants, and among them one to the effect that the contractors would well and faithfully observe the requirements of the act of Congress of August 13, 1894, entitled "An act for the protection of persons furnishing material and labor for the construction of public works," and "would promptly make payment to all persons supplying them labor and materials in the prosecution of the work provided for in the contract." Contemporaneously with the execution of the contract, the contractors executed a bond to the United States in the penal sum of $24,000, with the appellants Rothwell and Richards as sureties, conditioned for the faithful performance of the contract. The condition of the bond is in the following terms:

" The nature of this obligation is such, that if the said Baldwin and Peake, their heirs, executors, administrators, and assigns, or any of them, shall, and do in all things well and truly observe, perform, fulfill, accomplish, and keep all and singular the covenants, conditions, and agreements whatsoever, which, on the part of the said Baldwin and Peake, their heirs, executors, administrators, and assigns, are, or ought to be, observed, performed, fulfilled, accomplished, and kept, comprised, or mentioned in certain articles of agreement, bearing date the 22d day of October, one thousand eight hundred and ninety-seven, between the said Baldwin and Peake and the said Cornelius N. Bliss,

Secretary of the Interior, concerning the erection of four (4) pavilion buildings at the Government Hospital for the Insane, near Washington, D. C., according to the true intent and meaning of said articles of agreement, then the above obligation to be void; otherwise to remain in full force and virtue."

The act of Congress of August 13, 1894 (28 Stat. 278), to which reference has been made provides as follows: " That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being or has been prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor or contractors and his or their sureties, and to prosecute the same to final judgment and execution: Provided, that such action and its prosecution shall involve the United States in no expense."

Baldwin and Peake seem to have entered on the performance of their contract, and it is alleged that they became indebted to Thomas R. Riley, a sub-contractor, for materials furnished by him to them of the value of $3,722.29, and by

16 Ct. App.—28

them used in the construction of the buildings provided for by
the contract, and that they failed to make payment for such
materials.   Thereupon Riley caused the present suit to be
instituted on their bond in the name of the United States
to his use.   The declaration duly set forth the bond and the
breach of it; and copies of the contract and bond were
annexed to the declaration.   It does not appear that Bald-
win made any defense to the suit; but Peake, Rothwell and
Richards appeared by their attorneys and moved to strike
out the declaration and to dismiss the cause, on the ground
as claimed, that the bond was not such as was authorized
and directed by the act of Congress of August 13, 1894,
and that Riley had no right to sue on said bond in the
name of the United States.   This course of procedure is
assumed to be based on the opinion of the Supreme Court
of the United States, in the case of the *Corporation of Wash-
ington* v. *Young,* 10 Wheat. 406.   The court below over-
ruled the motion, with leave to the defendants to plead
within twenty days.   Thereupon they prayed for and were
allowed the present special appeal.

The contention of the appellants is, that the bond in
question was not executed in conformity with the statute,
and therefore that the equitable plaintiff, Riley, had no right
to sue upon it.   The determination of the second part of
this proposition, of course, is dependent on that of the first
part.   For it is too plain for argument, that, if the bond
was executed in conformity with the statute, any person in
the category of the equitable plaintiff was, by the express
words of the statute, authorized to maintain suit upon it in
the name of the United States for his own use and benefit.
If, on the other hand, the bond was not such as was author-
ized and required by the statute, it may be conceded that
persons in the situation of the equitable plaintiff could not
avail themselves of it under the statute.   The substantial
question, therefore, on this appeal is, whether the bond in
controversy is in conformity with the statute.

The argument on this point is, in brief, that the bond in this case contains no such provision as the act of Congress prescribes for the protection of those furnishing labor and material to contractors for public works; that, while the contemporaneous contract contains such a provision, it was inserted there unlawfully and without authority, and must be regarded as a nullity; that it can not be imported from the contract into the bond; and that, whether its omission from the latter document was the result of accident or design or misunderstanding of the law, the limit of the liability of sureties is that to which they have actually obligated themselves, and they can not be held beyond the strict letter of their bond. But the plain answer to this argument is, that the provision required by the statute for the protection of laborers and materialmen subordinate to contractors for public works *is* contained in the bond in controversy, and is fully and completely contained therein, and it is unnecessary to go outside of the letter of the bond to find it.

The bond embraces the contract; the latter is in express terms made an integral part of the bond. The sole obligation of the paper called the bond, as distinguished from the contract, is that the contractors shall perform "all and singular the covenants, conditions and agreements of the contract," and there is no other obligation of any kind in it. In fact, it is meaningless except as incorporating the contract into it, which it sufficiently does by its reference to it. Plainly, therefore, the contract is as much part of the bond as though it had been copied *verbatim* into it; and when the bond sufficiently indicates the covenants which it intends to secure, we know of no dictate of reason or rule of law that would require their repetition in the bond.

But it is suggested that the bond does not incorporate into itself the contract, because the reference in the bond is to a contract between the contractors, Baldwin & Peake, and Cornelius N. Bliss, Secretary of the Interior, when the true

contract is between Baldwin & Peake, on the one side, and "the United States of America, acting in this behalf by Cornelius N. Bliss, Secretary of the Interior," on the other side. But this objection is without substance. The bond purports to secure a contract executed by Baldwin & Peake, and by Cornelius N. Bliss, Secretary of the Interior, for the construction of certain buildings for the Government of the United States under the immediate charge of the Department of the Interior, which is the specific purpose of the contract entered into by the United States, acting through Cornelius N. Bliss, Secretary of the Interior; and while it would undoubtedly have been more accurate to have described the contract as having been made by the United States, through the agency of the Secretary of the Interior, than by the Secretary of the Interior, with the necessary inference that he was acting for the United States, yet there was no possibility of mistake in the matter, and no one was misled or prejudiced by the inaccuracy. Plainly, all parties understood that they were dealing with the United States, and not with Cornelius N. Bliss as an individual; and there can be no reasonable question that the contract with "Cornelius N. Bliss, Secretary of the Interior," specified in the bond, sufficiently identifies the contract with the United States intended to be secured by the bond.

It is argued, however, that there is no warrant of law for the insertion in the contract of any such provision as is contained therein for the protection of laborers and materialmen; that while the provision was proper to be placed in the bond, because the statute so required, yet its introduction into the contract was without authority; that it could not be enforced as part of the contract by the United States, and was therefore null and void; and that, being null and void, it could not be imported into the bond as a valid obligation. But this argument is fallacious. Assuming that as part of the contract the provision contained in it for the

protection of laborers and materialmen is unauthorized and should be regarded as a mere nullity, a proposition which we distinctly do not decide, the question before us is not as to the validity of the contract or of any provision contained in the contract, and is not even as to the validity of the bond; the question is whether the bond has been executed according to law by the insertion in it of a condition for the protection of laborers and materialmen. And it is not apparent to us how the sufficiency of the bond in this regard can be affected by any alleged invalidity in law of the provision in the contract to which it refers. In other words, the question is, not whether the provision in the contract is void, but whether the bond contains in it certain words and terms constituting on their face an obligation for the protection of laborers and materialmen; and these words are certainly in the bond by reference to the contract, whatever may be their value in the contract itself, standing independently of the bond.

It is also suggested that the recital in the bond, that it refers to a contract *"concerning the erection of four buildings,"* does not give the sureties sufficient notice of such alleged extraordinary and unusual conditions in the contract as this one for the protection of laborers and materialmen. But this contention we regard as also being without merit. The obligation, which the appellants, both principal and sureties, distinctly assumed by their bond was to perform all and singular the covenants, conditions and agreements of the contract. They were bound to take notice of every covenant, condition and agreement of the contract, ordinary and extraordinary. The fundamental principles of law and fair dealing require that they should not be permitted to execute solemn obligations like this, and then say that they did not know what the obligation contained. It was their duty to know. It was their duty to read the contract, of all and every covenant of which they guaranteed the

faithful performance; and we must assume in the present case that they did read it; for the record shows nothing to the contrary.

We do not deem it necessary to review the numerous authorities cited by the appellants. We do not regard any of them as applicable to the case before us. For this case is not one in which we are called upon to determine whether a strict or liberal construction is to be applied in the interpretation of a bond. The simple question is, whether the bond in controversy contains certain words, the sufficiency of which is not contested if they are found in the bond. We hold that they are found in the bond, because they are found in the contract which accompanies the bond, and which is made an integral part of it. The utmost that can reasonably be said, if that much, is that they are written in the wrong place. But that they are written in the instrument clearly and distinctly, and without possibility of being mistaken or misunderstood, we have no doubt.

From what we have said it follows in our opinion that the order appealed from was right and proper, and should be *affirmed, with costs. The cause will be remanded to the Supreme Court of the District of Columbia for further proceedings therein according to law. And it is so ordered.*