## GILL *v.* PAYSEE

### No. 2610

June 4, 1924.                                    226 Pac. 302.

1. Schools—Contractor's Surety Bond Construed Most Favorably to Beneficiary.

If terms of a building contractor's surety bond are susceptible of two constructions, that most favorable to beneficiary should be adopted, if consistent with purpose to be accomplished.

2. Schools—Obligee's Order to Pay Last Installment Due Contractor to Surety Held Practical Construction of Contract and Bond as Inuring to Benefit of Laborers and Materialmen.

Order by obligee, required by school building contractor's bond to notify surety in case of default and not to make last payment without its consent, that last payment be paid to surety, on contractor's default in payment for labor and materials, notwithstanding contractor's assignment, *held* binding practical construction of contract and bond as inuring to benefit of laborers and materialmen. (Per Sanders, J.)

3. Schools—Building Contractor's Bond Held Given Pursuant to Statute Requiring Bond Conditioned on Payment for Labor and Materials.

Building contractor's bond, reciting that it was given under Stats. 1921, c. 35, declaring laws governing letting of contracts for public buildings applicable, *held* given pursuant to Stats. 1913, c. 264, requiring bond conditioned on payment for labor and materials, though bond was conditioned to save obligee harmless only. (Per Coleman, J.)

See 32 Cyc. p. 307, n. 94; 35 Cyc. p. 960, n. 73, 84.

Appeal from Second Judicial District Court, Washoe County; *George A. Bartlett,* Judge.

Action by W. C. Gill against Robert Paysee and the United States Fidelity and Guaranty Company. From judgment against defendant corporation, it appeals. **Affirmed. Rehearing denied.** (Ducker, C. J., dissenting.)

*Gustin & Pence,* for Appellants:

Bond provides surety will save county harmless from loss by breach of contract, not that it will pay contractor's debts. Materialmen and laborers cannot sue on bond not made for their benefit. The few cases holding to contrary are lost in great weight of authority. First M. E. Church v. Isenberg, 92 Atl. 141; Page.

on Contracts, sec. 2408; Babcock v. Surety Co., 236 Fed. 340 (distinguishing Peake v. U. S., 16 App. D. C. 415, and Spear v. U. S., 31 App. D. C. 376, in which bond, though defective, provided contractors pay for material) ; 27 Cyc. 308.

Statute will not be read into bond to create liability not disclosed. Schaarbauer v. Lampasas Co., 214 S. W. 468.

If bond is not conditioned as required by statute it furnishes no protection to materialmen. Wilcox Co. v. School, 114 N. W. 263.

*Cooke, French & Stoddard,* for Respondent:

Crux of case is whether bond was in contemplation of 1913 Stats. 407. Appellant claims it was merely to indemnify county and not for faithful performance.

Stats. 1921, 63, was read into bond which recites board was acting under its provisions. Statute is in bond precisely as if expressly referred to. E. I. Dupont Co. v. Culgin Co., 92 N. E. 1023; 15 C. J. 561.

Contract and bond refer to 1921 statute which refers to 1913 statute. This constitutes adoption. Thaites v. Bicksbee, 167 Pac. 166; 36 Cyc. 1152; 2 Sutherland Cons. (2 ed.) 787.

When statutory terms are referred to they are binding though not set forth. People v. Surety Co., 105 N. E. 99.

Where bond is executed to secure performance of contract, bond and contract must be construed together. Walker Co. v. Surety Co., 211 Pac. 998.

Public building contract and bond that contractor furnish or provide material and perform labor, mean to pay for same and third party furnishing either can sue on such bond. Nye etc. Co. v. Roeser, 173 N. W. 605.

## OPINION

By the Court, SANDERS, J.:

This is an appeal from a judgment rendered upon the overruling of appellant's general demurrer to a complaint filed to recover a balance of $2,900 of an amount

due upon a contract for labor performed upon and materials furnished and used in the construction of a public building known as the "Lander County High School," at Battle Mountain, Nevada, in said county.

The facts alleged in the complaint are substantially as follows:

The legislature at its session in 1921 enacted a law which authorized, empowered, and directed the board of county commissioners of Lander County to issue bonds not to exceed in amount the sum of $75,000 for the purpose of providing funds for the construction of a county high school building in the town of Battle Mountain in said county, upon a site to be chosen by the county board of education, and for equipping and furnishing the said building. Statutes 1921, p. 63. The act provides that the board of education of said county, when created and organized pursuant to law, or, until so created and organized, the board of county commissioners, acting as a county board of education pursuant to law, shall determine as to the character of said building, the materials to be used therefor, and the plans therefor, and when such determination is made said board shall advertise for bids for the construction of said building and let the construction thereof by contract to the lowest and most responsible bidder. The laws in force governing the letting of contracts by boards of county commissioners are made applicable to and govern the action of the board in carrying out the provisions of the act.

Said board of county commissioners (designated the owner), acting as the board of education of said county, and in pursuance of said act, on the 5th day of January, 1922, let a contract to one Robert Paysee (designated the contractor) for the erection and construction of said building, in which the contractor agreed to provide all materials and perform all the work for the erection and construction of said building in accordance with the drawings and specifications on file in the office of the clerk of said county and made a part of the agreement, and agreed to complete said building not later than August 15, 1922. The agreement states:

"The full price to be paid for such work and materials is sixty-two thousand and no/100 (62,000) dollars, payable in accordance with said specifications, subject to additions and deductions therein provided for."

The contractor agreed to purchase the entire issue of bonds provided for in said act at par.

To secure the construction of the building, the contractor, contemporaneous with the letting of said contract, gave a bond to secure its performance, with the United States Fidelity and Guaranty Company as surety, which bond is conditioned as follows:

"Whereas, said principal has entered into a certain written contract with the obligee, dated January 5, 1922, to provide all the materials and perform the work for the erection and construction of building known as 'Lander County High School,' at Battle Mountain, Nevada.

"Now, therefore, the condition of the foregoing obligation is such that if the said principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of the said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law: Provided, however, that this bond is issued subject to the following conditions and provisions:

"First. That no liability shall attach to the surety hereunder unless, in the event of any default on the part of the principal in the performance of any of the terms, covenants or conditions of the said contract, the obligee shall promptly, and in any event not later than thirty days after knowledge of such default, deliver to the surety at its office in the city of Baltimore, written notice thereof with a statement of the principal facts showing such default and the date thereof; nor unless the said obligee shall deliver written notice to the surety at its office aforesaid, and the consent of the surety thereto obtained, before making to the principal the final payment provided for under the contract herein referred to.

"Second.    That in case of such default on the part of the principal, the surety shall have the right, if it so desire, to assume and complete or procure the completion of said contract; and in case of such default, the surety shall be subrogated and entitled to all the rights and properties of the principal arising out of the said contract and otherwise, including all securities and indemnities theretofore received by the obligee, and all deferred payments, retained percentages and credits, due to the principal at the time of such default, or to become due thereafter by the terms and dates of the contract.

"Third.    That in no event shall the surety be liable for a greater sum than the penalty of this bond, or subject to any suit, action or other proceeding thereon that is instituted later than the 5th day of January, A. D. 1923.

"Fourth.    That in no event shall the surety be liable for any damage resulting from, or for the construction or repair of any work damaged or destroyed by an act of God, or the public enemies, or mobs, or riots, or civil commotion, or by employees leaving the work being done under said contract, on account of so-called 'strikes' or labor difficulties.

"Fifth.    (a) That the surety shall not be liable for damages for injuries to the person of any one, under or by authority of any statutory provision for damages or compensation to any enployee, or otherwise; and

"(b) Shall not be obligated to furnish any bond or obligation other than the one executed."

After the execution and delivery of said contract and bond, the contractor entered upon the construction of the building, and on or about the 27th day of May, 1922, entered into a contract with one W. C. Gill, whereby said Gill agreed to wire said building and install a clock system therein for the agreed price of $3,400.    Gill performed his contract, and $500, and no more, was paid him for his labor and materials furnished and used in the construction of the building, leaving a balance of $2,900, which the contractor and the surety on his bond, upon the demand of Gill, refused to pay.

The building was accepted by the owner's architect as a completed building in accordance with said drawings and specifications on December 4, 1922, and the building was formally received by the board of county commissioners of Lander County as a completed structure on January 2, 1923. On said date the owner owed the contractor a balance of $10,150 on his building contract. Prior to that date the contractor had assigned, or attempted to assign, all or a greater portion of said sum to the Battle Mountain State Bank. On the day the building was received the owner caused an order to be made and entered in its minutes directing that said sum of $10,150 due the contractor be paid over to the United States Fidelity and Guaranty Company, the surety on his bond. Thereafter the Battle Mountain State Bank commenced an action against said board of county commissioners and certain officers of Lander County and prayed for an injunction that they be restrained and enjoined from the payment of said sum of $10,150 to said surety company, which action is pending.

On the 24th day of February, 1923, W. C. Gill, as subcontractor, commenced this action against Robert Paysee, the contractor, and the United States Fidelity and Guaranty Company, to recover judgment for the sum of $2,900, alleged to be due him upon his contract for the labor, material, and equipment furnished and used in the construction of the building, and for $500 attorney's fee. In addition to the recital in his complaint of all the facts hereinabove set out, he alleged that the bond given to secure the performance of the contract between Paysee, the contractor, and the board of county commissioners, as owner, was exacted, required, and obtained pursuant to a statute enacted in 1913 entitled:

"An act requiring bonds for the protection of subcontractors, laborers and materialmen on public buildings and structures; providing for the filing of such bonds and the giving and effect of certified copies thereof; creating a penalty for failure to exact such bonds; relating to actions thereon, to procedure in such

actions, and allowing an attorney's fee to the prevailing party." Statutes 1913, 407.

The defendant Paysee did not appear in the action. The defendant company interposed a general demurrer to the complaint, which was overruled. Said defendant elected to stand upon its demurrer and allowed judgment to go against it for the sum of $2,900 and $500 attorney's fee. Thereafter said defendant perfected its appeal from said judgment, and upon appeal assigns as error that the complaint does not state facts sufficient to constitute a cause of action against appellant and that the complaint does not support the judgment. The record does not disclose upon which of the two grounds urged in this court in support of the general demurrer the order of the district court overruling the demurrer was based, and therefore the question of whether the complaint supports the judgment is presented here de novo.

It is contended that the plaintiff cannot maintain this action against appellant for two reasons: First, that it is apparent that the bond sued upon was executed solely to indemnify and save harmless the obligee from any pecuniary loss resulting from any breach of the principal's contract to provide all the materials and perform all the work for the erection and construction of the building known as the Lander County High School; that said bond was not given for the benefit of laborers and materialmen, and since plaintiff is not a party to the bond, he has no cause of action against appellant upon the bond as a common-law undertaking. Second, that the bond sued upon is not the bond required by the statute of 1913, enacted for the protection of subcontractors, laborers, and materialmen, in that the bond does not contain the mandatory condition required by the statute, which is as follows:

"Which bond shall be conditioned that the contractor shall well and truly pay, or cause to be paid, all just debts contracted by him for labor performed upon and materials furnished for the work provided to be done by said contract."

In considering the statute of 1913 and the scope of the bond as a statutory undertaking, my associates entertain divergent views. Their conclusions, however, upon this branch of the demurrer do not dispose of the case. The basis for the demurrer is that regardless of the character of the instrument sued on, whether it be classed as a common-law undertaking or a bond required by the statute, the plaintiff cannot maintain this action against appellant, because, in strictness, the bond is solely for the benefit of the owner and was given to indemnify and save harmless the owner from any pecuniary loss resulting from the breach of the contractor's agreement to provide all the materials and perform all the work necessary for the construction of the school building according to the drawings and specifications therefor. It is argued that the building was completed according to contract and was accepted by Lander County through its board of county commissioners; that the county has sustained no loss, and it is not alleged that it has suffered any loss or that it will suffer any, and since the payment of claims of laborers and materialmen were not provided for in the bond, the liability of appellant cannot by construction be extended so as to include laborers and materialmen, on the theory that the contractor's agreement to provide all the materials and perform all the work was equivalent to an agreement to pay therefor. This proposition seems to be supported by the greater weight of authority, but I am not unmindful of the authorities cited by counsel for respondent, which are to the effect that contracts of similar character to the one here involved are for the benefit of laborers and materialmen.

1. I am unable, however, to follow the argument of able counsel for appellant that in the determination of the legal bounds of appellant's liability upon its surety contract, the rule of strictissimi juris must be applied. The class of suretyships to which appellant belongs is not regarded as "a favorite of the law." And if the terms of the surety contract are susceptible of two constructions, that one should be adopted, if consistent

with the purpose to be accomplished, which is most favorable to the beneficiary. See Royal Indemnity Co. v. Northern Granite & Stone Co., 100 Ohio St. 373, 126 N. E. 405, 12 A. L. R. 378, note page 382. The court in that case remarks:

"Especially is this so when the contract of suretyship employs ambiguous terms relating to those furnishing labor and material which enter into the structure."

It is interesting to note that in the opinion the court expressly disapproves the principle announced in Cleveland Metal Roofing, etc., Co. v. Gaspard, 89 Ohio St. 185, 106 N. E. 9, L. R. A. 1915A, 768, Ann. Cas. 1916A, 745, and approves the case of W. P. Fuller & Co. v. Alturas School District, 28 Cal. App. 609, 153 Pac. 743, holding that a contract to provide labor and materials at the contractor's own risk, cost, and expense is not for the benefit of the owner alone, but, as well, for the benefit of laborers and materialmen.

2. Appellant contends that there is nothing in the bond here involved which, either by express provision or by necessary implication, guarantees the payment by the contractor of laborers and materialmen; that the bond is conditioned that if the contractor shall well and truly indemnify and save harmless the obligee from any pecuniary loss resulting for his failure to provide all the materials and perform all the work necessary for the construction of the building, its obligation shall be void. Therefore, in the opinion of counsel, it cannot reasonably be claimed that the contractor's engagement to provide the materials and perform the work casts any liability upon appellant to pay therefor.

Coming to the real question in the case, as said in one of the cases cited by appellant, the case is not difficult, unless we try to make it different from what it really is. In the opinion of the writer, the parties themselves have placed such a practical construction upon the bond as to make it inure to the benefit of plaintiff. On the day the building was received as a completed structure according to the drawings and specifications, the obligee and the surety were confronted

with the contractor's default in payment for the labor and materials which entered into the structure. The price fixed by the agreement to be paid for such work and materials was $62,000, payable according to the drawings and specifications. The obligee was required by the condition of the bond to notify the surety in the event of any default on the part of the contractor, and not to make the last payment due the contractor in case of such default without its consent. In this situation the obligee, instead of recognizing the contractor's assignment of the amount due him for the work and materials, ordered said sum to be paid over to appellant, his surety, for no purpose that I can perceive other than to enable the appellant to indemnify and save harmless the obligee from any pecuniary loss resulting from the default of the contractor to pay for the labor and materials which entered into the completed structure. The acts and conduct of the parties on the day for final settlement is a demonstration that their interpretation of the contract and bond was that the agreement of the contractor to provide all labor and material was equivalent to an agreement to pay therefor. Except as stated, the contract was in all other respects performed, and the appellant cannot consistently contend, under the attendant facts and circumstances, that plaintiff has no direct right of action on the bond as a third party beneficiary.

To suppose that such was not the understanding of the parties is too unreasonable a proposition to be for a moment entertained. If it were not contemplated by the parties that the contractor was obligated by his contract to pay for the labor and material which entered into the structure, there was neither reason nor necessity for the obligee to order that the last payment due the contractor of $10,150 be paid over to the appellant, his surety. In my judgment, this was such a contemporaneous construction of the contract and the bond given for its fulfillment that it should govern in their interpretation.

I conclude that the labor and materials furnished in

this case were within the obligation of the surety company on the bond, and in that view I affirm the judgment, with the understanding that I intimate no opinion as to who is entitled to the sum of $10,150 due upon the building contract.

Coleman, J., I concur in the order:

This is an action upon a bond by a contractor conditioned to hold the obligee harmless under a contract entered into between the obligee in the bond and the contractor for the erection of a schoolhouse. The building in question was erected pursuant to the provisions of chapter 35, Stats. 1921, which, in addition to providing for the issuing of bonds for the purpose of raising the money necessary to pay for the erection of the building, authorizes the execution of a contract for the construction of the building. This statute also provides that the laws of the state governing the letting of contracts of public buildings are made applicable. Chapter 264, Statute of 1913, provides that in the erection of public buildings a bond shall be exacted of the contractor, conditioned that he shall well and truly pay or cause to be paid all just debts contracted by him for labor performed and materials furnished in the execution of the contract. In the instant case a bond was exacted of and executed by the contractor; but, instead of being conditioned in the language of the statute, it was conditioned to "save harmless" the obligee, and provided that the obligors were bound unto the obligee under the provisions of chapter 35, Stats. 1921.

3. It is the contention of the appellant that the bond in question was not given pursuant to the provisions of chapter 264, Stats. 1913, since it is not conditioned as therein provided, and hence no liability attaches.

I cannot agree with this contention. Public buildings in this state are not subject to mechanics' liens, and, prior to the enactment of 1913, there was no law looking to the protection of laborers and materialmen. Contractors might collect the full amount of their

contract price and pay none of the obligations incurred in complying with the terms of their contracts. Hence the enactment of the 1913 statute. By the terms of this statute the legislature sought to safeguard the rights of materialmen and laborers. The act makes it the imperative duty of public boards and officials letting contracts for the erection of public buildings to exact bonds for the protection of such persons and makes such officials jointly and severally liable for failure to do so. In the instant case the officials exacted a bond—evidently for the sole purpose of complying with the requirements of the statute; but the bond executed does not technically conform to the language of the statute. However, in spirit, it manifests a purpose and intention to do so. I am satisfied that the statute of 1913 must be read into the bond in question. I am of this opinion primarily for the reason that the bond itself alludes to the statute of 1921 which expressly provides that the laws of the state governing the letting of contracts by boards of county commissioners are made applicable to contracts of this character. The general rule applicable to the situation in hand is admirably stated in 9 C. J. p. 34, sec. 56, as follows:

"The law at the time of the execution of a bond is a part of it; if it gives to the bond a certain legal effect it is as much a part of the bond as if in terms incorporated therein. When a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute, and the construction given to the statute by the courts. Such a bond must be given the effect which in reason must have been intended by the statute."

The case of Nye-Schneider-Fowler Co. v. Roeser et al., 103 Neb. 614, 173 N. W. 605, is squarely in point and supports the conclusion which I have reached.

In the case of Acme Brick Co. v. Taylor et al. (Tex. Civ. App.) 223 S. W. 248, the court recognized the rule upon which I rely, but held that the surety could not be held since it appeared from the bond in the case that it was not the intention to execute a statutory bond, which clearly distinguishes it from the instant case.

The bond should be liberally construed for the purpose of effectuating the intention of the parties. The rule of strictissimi juris does not prevail in favor of a surety company which executes a bond for compensation. Lassetter v. Becker (Ariz.) 224 Pac. 810.

The authorities hold that the presumption prevails that such a bond is given pursuant to statute, and, to my satisfaction at least, this is conclusively shown by the fact that the bond recites that it is given "under the provisions of chapter 35 of Session Laws of Nevada, 1921," which statute expressly provides that—

"The laws in force governing the letting of contracts by boards of county commissioners are hereby made applicable to and the same shall govern the action of the county board of education in carrying out   *   *   * this act."

I do not see how it could more clearly appear that the bond in question was executed and given in pursuance of the statute.

DUCKER, C. J., dissenting:

This is an action brought by a materialman against a contractor and the surety on the latter's bond. The action was commenced on February 24, 1923. The contractor was not served with summons and never appeared in the action. It is alleged in the complaint that the contractor, Robert Paysee, on January 5, 1922, entered into a written agreement with the board of county commissioners of Lander County, Nevada, acting as the board of education under the provisions of chapter 35 of the Statutes of 1921, for the construction of a high school building at Battle Mountain, in said county. It is also alleged in the complaint that, before letting the contract to the said contractor and pursuant to an act

of the legislature of Nevada entitled "An act requiring bonds for the protection of subcontractors, laborers and materialmen on public buildings," etc., approved March 26, 1913, the said board of education obtained from the contractor a bond, conditioned, among other things, to the effect that the said contractor would, at his own cost and expense, furnish and provide all material and perform all work in the construction of said building pursuant to said contract; and that the said contractor as principal, and the United States Fidelity and Guaranty. Company as sole surety, duly executed and delivered said bond to said board of county commissioners. It is further alleged in the complaint that the contractor entered upon the construction of the building in accordance with the plans and specifications of the architect, and that on or about May 27, 1922, plaintiff, respondent here, entered into a contract with the said principal, according to the terms of which plaintiff was to furnish the material and do the work of wiring said high school building according to the plans and specifications, for the contract price of $3,400; that plaintiff completed the work on or about December 24, 1922; that a balance of $2,900 was due him from said Paysee; and that demand has been made by plaintiff upon Paysee and his said surety, for the payment of such balance, which they have neglected and refused to pay, and are therefore in default upon said bond. Plaintiff further alleges that there remains unpaid to said Paysee by the county on said contract the sum of $10,150, which is in the possession of the board; that Paysee has assigned, or attempted to assign, such moneys, or a portion thereof to the Battle Mountain State Bank, a banking corporation; and that the board of county commissioners has ordered said money to be paid to said United States Fidelity and Guaranty Company, and that the Battle Mountain bank has commenced an action enjoining the county and its officers from paying out said money, and that said suit is still pending. It is further alleged that the building was constructed in conformity with the plans and

specifications; that it was completed on December 4, 1922, and in a condition for acceptance; and that it was accepted by the board of county commissioners on January 2, 1923.

A general demurrer to the complaint was overruled, and from the judgment rendered the United States Fidelity and Guaranty Company has taken this appeal.

Appellant contends that the complaint does not state a cause of action. The contract, a copy of which is annexed to the complaint, recites that—

"This agreement made the 5th day of January, 1922, by and between Robert Paysee, of Twin Falls, Idaho, party of the first part (hereinafter designated the contractor), and the board of county commissioners of Lander County, Nevada, acting as the board of education under the provisions of chapter 35 of Session Laws of Nevada, 1921, party of the second part (hereinafter designated the owner)."

It provides, among other things, that—

"The contractor shall and will provide all the materials and perform all the work for the erection and construction of the high school building."

A copy of the bond is also annexed to the complaint and the provisions of the bond necessary to be considered are as follows:

"Know all men by these presents, that Robert Paysee, of Twin Falls, Idaho (hereinafter called the principal), and the United States Fidelity and Guaranty Company, a corporation created and existing under the laws of the State of Maryland, and whose principal office is located in Baltimore City, Maryland (hereinafter called the surety), are held and firmly bound unto board of county commissioners of Lander County, Nevada, acting as board of education under provisions of chapter 35 of Session Laws of Nevada, 1921 (hereinafter called the obligee), in the full and just sum of thirty-one thousand dollars, lawful money of the United States, to the payment of which sum, well and truly to be made, the said principal binds himself, his heirs, executors and administrators, and the said surety binds itself, its successors

and assigns, jointly and severally, firmly by these presents.

"Signed, sealed and delivered this 5th day of January, A. D. 1922.

"Whereas, said principal has entered into a certain written contract with the obligee, dated January 5, 1922, to provide all the materials and perform the work for the erection and construction of building known as 'Lander County High School,' at Battle Mountain, Nevada.

"Now, therefore, the condition of the foregoing obligation is such that if the principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of the said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law."

Respondent contends that the bond was given under the provisions of chapter 264, Stats. 1913, which statute provides that at the time of making any contract for the erection, construction, alteration, or repair of any public building or structure, the contract price of which shall exceed the sum of $500, the party letting the contract shall exact from the contractor a bond conditioned that the contractor shall well and truly pay, or cause to be paid, all just debts contracted by him for labor performed upon and materials furnished for the work provided to be done by said contract (Stats. 1913, p. 407), and that this condition must therefore be read into the bond. The contention that the bond was given under this act is based upon the fact that the bond recites that the board was acting under the provisions of chapter 35 of the Session Laws of Nevada for 1921, which provides that—

"The laws in force governing the letting of contracts by boards of county commissioners are hereby made applicable to and the same shall govern the action of the county board of education in carrying out * * * this act." Stats. 1921, p. 63.

The recital in the bond that the board of county commissioners was acting as a board of education under the provisions of the law last mentioned does not manifest an intention to comply with the act of 1913. It is merely a reference to the statutory authority by which the former board assumed to act as a board of education. There is no express promise by the appellant in the bond to pay the debt of a third party, or any language, viewed in the light of a most liberal rule, from which such a promise can be inferred. The only condition in the bond is, as before set out, namely, that the principal shall indemnify and save harmless the obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the contract. The bond does not fail merely technically to conform to the statutes of 1913, it fails completely in this respect. The only condition required by such statute is not in the bond. Section 5 of the act of 1913 prescribed what shall be the effect if the bond provided for is not taken. The section reads:

"If the party letting such contract shall fail to exact and take the bond herein provided for, or shall knowingly accept insufficient sureties thereon, such party, and the individual officers and agents thereof, by whom such contract was authorized, shall be jointly and severally liable to all who have performed labor upon and to all who have furnished materials for the work provided to be done by such contract, to an amount not exceeding twenty-five (25) per cent of the contract price, but wherever the party itself shall pay, upon default of the contractor, any liability hereby created, it shall have a right of action, jointly and severally, against the individual officers and agents thereof, by which said contract was authorized, and against their bondsmen, if any, for any amount or amounts so paid."

From this it is quite clear that it was not the intention of the legislature that the condition for the benefit of laborers or materialmen, if omitted, should become a part of the bond as if incorporated in it. The case of Acme Brick Co. v. Taylor et al. (Tex. Civ. App.) 223 S. W. 248, is in point. In that case recovery was sought

for supplies furnished the contractor against the surety company on a bond, which did not contain the condition required by law, that such contractor "shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract." The court said:

"The bond here involved contains no such stipulation, and therefore is not the bond required by the statute with reference to public buildings. It may be good as a common-law bond, but does bind the surety further than therein specifically stated, which is that the principal shall faithfully perform his contract with the obligees. This it appears he did, for the building was completed and received by the school trustees, and the full price paid therefor. It is true that a statutory bond will be construed in the light of the statute, and will impose upon the bondsman all of the liabilities required by the statute, where it appears that it was the intention to execute such statutory bond; but no such intention appears from the bond in this case. The trustees failed to discharge their duty in not taking a bond as required by statute, but that cannot make the bondsman liable for something that he did not guarantee."

It is insisted that the provision of the contract that the contractor shall and will provide all the materials, and perform all the work, when liberally construed, shows that it was intended by the parties to include the proposition that the contractor was to pay for the same, and that the recital of this provision of the bond was intended to be a condition of it. To grant this contention would simply result in reading into the bond a supposed intent of the parties, which its language will not bear. Respondent's contention in this respect seems to be sustained by the Nebraska cases cited by him, particularly the case of Nye-Schneider-Fowler Co. v. Roeser, 103 Neb. 614, 173 N. W. 605. I do not regard the reasoning of the case as sound, and think, as pointed out in the dissenting opinion, that an intent to provide for the payment of the materialmen was read into the bond contrary to well-recognized canons of construction.

The ruling runs counter to the great current of authority. Electric Appliance Co. v. United States Fidelity and Guaranty Co., 110 Wis. 434, 85 N. W. 648, 53 L. R. A. 609; Parker v. Jeffery, 26 Or. 186, 37 Pac. 712; Montgomery v. Rief, 15 Utah, 495, 50 Pac. 623; First Methodist Episcopal Church v. Isenberg, 246 Pa. 221, 92 Atl. 141; Green v. Independent, 121 Iowa, 663, 97 N. W. 72; Greenfield v. Parker, 159 Ind. 571, 65 N. E. 747; Spalding v. Brown, 171 Ill. 487, 49 N. E. 725; Townsend v. Cleveland, 18 Ind. App. 568, 47 N. E. 707; City of Sterling v. Wolf, 163 Ill. 467, 45 N. E. 218; Dunlap v. Eden, 15 Ind. App. 575, 44 N. E. 560; Searles v. City, 225 Ill. 167, 80 N. E. 98; Smith v. Bowman, 32 Utah, 33, 88 Pac. 687, 9 L. R. A. (N. S.) 889; Babcock & Wilcox v. American Surety Co. of New York, 236 Fed. 340, 149 C. C. A. 472.

In Babcock & Wilcox v. American Surety Co., supra, materialmen brought an action in equity against the contractor and the surety company to recover the value of materials sold to the contractor and used in the construction of a dormitory at an Indian school. An act of Congress required any person or persons entering into a formal contract with the United States for the construction of any public building to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract. The contract made required the contractor to furnish all the materials, but the bond did not contain the obligation required by the statute. It was held that the liability of the surety could not by construction be extended so as to include the materialmen, on the theory that the agreement to furnish materials was equivalent to an agreement to pay therefor. The court said:

"When all is said the case is simply this: That Opdahl by his contract agreed to give a bond obligating himself to pay the claims of materialmen, but he failed to give any such bond. The surety company signed the bond which was executed, and no other. The bond itself

did not provide for the payment of materialmen, nor did the contract contain any such provision. The case is not difficult, unless we try to make it different from what it really is."

Mr. Page, in his work on Contracts, says:

"A provision in a contract, by which the contractor agrees to furnish material, cannot impose upon the sureties on his bond the duty of paying for material which he has purchased, if the bond does not purport to include such liability." Page on the Law of Contracts, vol. 4, sec. 2408, p. 4270.

The other cases cited by respondent are not in point. In the Kentucky case cited and quoted from in respondent's supplemental brief, one of the provisions of the contract was that the contract price would be paid by the church to the contractor providing the property was kept free from all liens or rights of liens for debts due or claimed to be due from the contractor, and the bond was conditioned to a faithful compliance with the terms of the contract. After the contractor quit work upon the building, it was ascertained that there were several hundred dollars due from the contractor for material which had been used in the construction of the building, and due laborers for work done in the construction of it. These sums the church was compelled to discharge. It it quite plain that under this state of facts the church had suffered a loss against the guaranty of the bond, and that the surety was liable for it.

The foregoing case is obviously different from the instant case, which I regard as one involving solely the language of the bond. The language does not in my opinion disclose an intent to secure third parties, nor does the bond purport to have been made under the authority of a statute enacted for their benefit.

ON PETITION FOR REHEARING

August 5, 1924.

*Per Curiam:*

Rehearing denied.

DUCKER, C. J.: I dissent.